**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BUREAU of CONSUMER FINANCIAL PROTECTION<br>Plaintiff,<br><br>v.<br><br>1ST ALLIANCE LENDING, LLC; JOHN DIIORIO; KEVIN ST. LAWRENCE; AND SOCRATES ARAMBURU,<br>Defendants. | Case No. 3:21-CV-00055-RNC |

**INDIVIDUAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

DATE: June 29, 2021

Mitchel H. Kider, pro hac vice
Michael Kieval, pro hac vice
Jeffrey Blackwood, pro hac vice
WEINER BRODSKY KIDER PC
1300 19th St NW, 5th Floor
Washington, D.C. 20036
Tel: 202-628-2000
Fax: 202-628-2011
Email: kider@thewbkfirm.com
kieval@thewbkfirm.com
blackwood@thewbkfirm.com

Ross Garber
The Garber Group LLC
100 Pearl St., 14th Floor
Hartford, CT 06103
Tel: (860) 983-5145
Fax: (860) 983-5145
Email: rgarber@thegarbergroup.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. In the Second Circuit, Rule 9(b) Applies to Claims under Consumer Protection Statutes that Sound in Fraud ........ 2

II. The CFPB Has Effectively Conceded the Individuals' Arguments Regarding the Corporate Form and Veil Piercing ........ 4

III. The CFPB Failed to Establish Why the FTC Act's Standard for Individual Liability Should Apply to the CFPA. ........ 6

IV. The CFPB Failed to Address Its Deficient Pleadings ........ 7

A. Even Under a Rule 8 Pleading Standard, the CFPB Failed to Adequately Allege that the Individuals "Engaged" in Unlawful Conduct ........ 7

B. "Engage" Means More than a Corporate Position ........ 8

V. The CFPB's Request for Leave to Amend Should be Denied ........ 10

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021) ........ 6, 7

*Babbitt v. Koeppel Nissan, Inc.*, No. 18-CV-5242, 2020 U.S. Dist. LEXIS 104244 (E.D.N.Y. June 15, 2020) ........ 3

*Bardwil Indus. v. Kennedy*, No. 19-cv-8211, 2020 U.S. Dist. LEXIS 172569 (S.D.N.Y. Sep. 21, 2020) ........ 7

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ........ 7

*CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 U.S. Dist. LEXIS 123825 (M.D. Pa. Aug. 4, 2017) ........ 3

*CFPB v. RD Legal Funding*, 332 F. Supp. 3d 729 (S.D.N.Y. 2018) ........ 7

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) ........ 6

*Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 U.S. Dist. LEXIS 177756 (S.D.N.Y. Dec. 2, 2016) ........ 6

*Consumer Fin. Prot. Bureau v. Prime Mktg. Holdings, LLC*, No. 16-CV-7111, 2016 U.S. Dist. LEXIS 194873 (C.D. Cal. Nov. 15, 2016) ........ 2

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ........ 6

*FTC v. D-Link Sys.*, No. 3:17-cv-39, 2017 U.S. Dist. LEXIS 152319 (N.D. Cal. Sep. 19, 2017) ........ 2

*FTC v. ELH Consulting, LLC*, No. CV 12-2246, 2013 U.S. Dist. LEXIS 126110 (D. Ariz. Sep. 4, 2013) ........ 2

*FTC v. Ivy Capital, Inc.*,
No. 2:11-CV-283, 2011 U.S. Dist. LEXIS 57035 (D. Nev. May 25, 2011)................................. 2

*FTC v. LeadClick Media, LLC*,
838 F.3d 158, 170 (2d Cir. 2016)........................................................................................ 5

*FTC v. Lights of Am., Inc.*,
760 F. Supp. 2d 848 (C.D. Cal. 2010) ................................................................................ 2

*FTC v. Moses*,
913 F.3d 297, 306 (2d Cir. 2019)........................................................................................ 9

*Hughes v. Ester C Co.*,
930 F. Supp. 2d 439, 465 (E.D.N.Y. 2013) ......................................................................... 3

*Janney v. Mills*,
944 F. Supp. 2d 806 (N.D. Cal. 2013) ................................................................................ 3

*Jim Walter Corp. v. FTC*,
625 F.2d 676 (5th Cir. 1980) ............................................................................................... 9

*Joblove v. Barr Labs., Inc. (In re Tamoxifen Citrate Antitrust Litig.)*,
466 F.3d 187 (2d Cir. 2006)............................................................................................... 10

*Meserole v. Sony Corp. of Am., Inc.*,
No. 08 Cv. 8987, 2009 U.S. Dist. LEXIS 42772 (S.D.N.Y. May 18, 2009) ................................ 3

*Ming Hou v. Pat Kwok Lam*,
No. 3:16-cv-01592, 2017 U.S. Dist. LEXIS 159170 (D. Conn. Sep. 27, 2017)............................ 4

*Prasad v. City of N.Y.*,
370 F. App’x 163 (2d Cir. 2010) ....................................................................................... 10

*Rai v. WB Imico Lexington Fee, LLC*,
802 F.3d 353 (2d Cir. 2015)................................................................................................. 6

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)......................................................................................... 2, 3, 4

*Williams v. Scottrade, Inc.*,
No. 06-CV-10677, 2006 U.S. Dist. LEXIS 50306 (E.D. Mich. July 24, 2006) ............................ 3

**Rules**

Federal Rule of Civil Procedure Rule 8 .................................................................... 1, 2, 7

Federal Rule of Civil Procedure Rule 9(b) ............................................................ 1, 2, 3, 4

# INTRODUCTION

The CFPB's Amended Compliant targets individual executives based on their company's alleged compliance violations without any substantive allegations that these individuals engaged in wrongoing. This is contrary to the text of the Consumer Financial Protection Act (CFPA) and precluded by binding Second Circuit precedent.

The CFPB does not argue that its Amended Complaint is pleaded with the particularity required by Rule 9(b), but instead urges the Court to adopt the more lenient pleading standard of Rule 8. Given that the gravamen of the complaint addresses alleged misrepresentations and omissions in dealings with consumers, caselaw in this Circuit supports application of the Rule 9(b) standard and, accordingly, dismissal of the counts against the Individuals..

Even under Rule 8, however, the allegations against the individuals are insufficient to survive a Motion to Dismiss. The CFPB has also failed to defend a key component of its allegations—the provably false assertion that the Individuals were responsible as purported "Managing Members." The sole substantive assertion is in Paragraph 36 of the Amended Complaint and relates to a document that two of the three Individuals allegedly received. It should be beyond question that Mr. Aramburu, the Individual defendant the CFPB does not allege received the document, should be dismissed from this case. And, as explained below, receipt of the document in question would not be sufficient to trigger liability for the other two Individuals.

The remaining Paragraphs the CFPB cites are so general as to be mere legal conclusions, and, in any case, do not distinguish the Individuals here from any other corporate executives at any other company, let alone plausibly allege that they "engaged" in unfair or deceptive acts or

practices. Nor does the CFPB even try to distinguish among the three Individuals or allege conduct by any of them, beyond their titles and the alleged fact of their involvement in the management of 1st Alliance. The allegations against the Individuals do not satisfy the pleading standards of Rule 8, much less the rigerous standards of Rule 9(b).

## ARGUMENT

### I. In the Second Circuit, Rule 9(b) Applies to Claims under Consumer Protection Statutes that Sound in Fraud

As the Individuals explained previously, because UDAAP claims under the CFPA "sound in fraud," Rule 9(b)'s heightened pleading standards apply to the CFPB's UDAAP claims in Counts 3-5. *See* Individuals' Memo at 8, Dkt. 32-1 (citing *Consumer Fin. Prot. Bureau v. Prime Mktg. Holdings, LLC,* No. 16-CV-7111, 2016 U.S. Dist. LEXIS 194873 (C.D. Cal. Nov. 15, 2016)).[1] The CFPB argues that, "[a]s several courts have noted, Rule 9(b) is particularly inapplicable to claims based on consumer-protection statutes because those statutes, like the MAP Rule, are strict-liability laws that lack any scienter element." Opp. at 12, Dkt. 36. All but one of the "several courts" referenced by the CFPB as disagreeing are not in the Second Circuit. Second Circuit law makes clear that the applicability of Rule 9(b) turns on "the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Thus, whether a scienter element is present is not the relevant factor under Second Circuit law; rather, the question is simply whether the conduct alleged "sounds in fraud." Claims

[1] Indeed, courts frequently apply Rule 9(b) to similar claims under the FTC Act. *See, e.g., FTC v. D-Link Sys.*, No. 3:17-cv-00039, 2017 U.S. Dist. LEXIS 152319 (N.D. Cal. Sep. 19, 2017); *FTC v. ELH Consulting, LLC*, No. CV 12-02246, 2013 U.S. Dist. LEXIS 126110 (D. Ariz. Sep. 4, 2013); *FTC v. Ivy Capital, Inc.*, No. 2:11-CV-283, 2011 U.S. Dist. LEXIS 57035 (D. Nev. May 25, 2011); *FTC v. Lights of Am., Inc*., 760 F. Supp. 2d 848 (C.D. Cal. 2010).

for "deceptive" conduct clearly do.[2]

The CFPB also claims that 9(b) should not apply to UDAAP claims under the CFPA because doing so would be "inconsistent with the remedial nature of consumer protection statutes." Opp. at 12 (quoting *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 U.S. Dist. LEXIS 123825, at *24 (M.D. Pa. Aug. 4, 2017), another out-of-circuit case). In support of its position, the CFPB cites only non-controlling authority. *See id.* The CFPB also attempts unsuccessfully to distinguish the Second Circuit authority cited by the Individuals, *Rombach v. Chang*, on the basis that it "is a private securities case, not a consumer-protection case." Opp. at 12. But the CFPB cannot dismiss binding precedent based on vague arguments about statutory purpose, and this argument has already been rejected by another court in this Circuit, which noted that, "while traditionally associated with claims of securities fraud, Rule 9(b) has been applied to claims of consumer fraud as well as claims relating to consumer protection statutes." *Meserole v. Sony Corp. of Am., Inc.*, No. 08 Cv. 8987, 2009 U.S. Dist. LEXIS 42772, at *9 (S.D.N.Y. May 18, 2009) (collecting consumer protection act cases). Indeed, contrary to the CFPB's assertion that *Rombach* is limited to securities cases, courts in this Circuit do apply *Rombach* in other contexts as well.[3]

The CFPB's claims in Counts 3 and 5 of deceptive conduct in violation of the CFPA

---

[2] *See, e.g.*, *Janney v. Mills*, 944 F. Supp. 2d 806, 817-18 (N.D. Cal. 2013) (applying Rule 9(b) to CA false advertising and deceptive practices claims); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 465 (E.D.N.Y. 2013) (applying Rule 9(b) to state law claims of "false advertising and unfair, unlawful, or deceptive business practices"); *Williams v. Scottrade, Inc.*, No. 06-CV-10677, 2006 U.S. Dist. LEXIS 50306, at *7, *19-21 (E.D. Mich. July 24, 2006) (applying Rule 9(b) to Michigan Consumer Protection Act claim which involved allegations of false advertising).

[3] *See, e.g.*, *Babbitt v. Koeppel Nissan, Inc.*, No. 18-CV-5242, 2020 U.S. Dist. LEXIS 104244 (E.D.N.Y. June 15, 2020) (applying *Rombach* to breach of fiduciary duty, duty of loyalty); *Meserole*, 2009 U.S. Dist. LEXIS 42772, at *9 (applying *Rombach* to consumer protection claims).

require a "material misrepresentation, omission, or practice that is likely to mislead a consumer." Am. Compl. ¶ 79, Dkt. 27.[4] Because these claims plainly sound in fraud, the CFPB must plead details sufficient to meet the heightened requirements of Rule 9(b).[5] Because it has not, the Motion should be granted.

## II. The CFPB Has Effectively Conceded the Individuals' Arguments Regarding the Corporate Form and Veil Piercing

As explained in the Individuals' Memo, the Complaint attempts to establish individual liability based on the false assertion that Mr. St. Lawrence and Mr. Aramburu were supposedly "Managing Members" of 1st Alliance, which is contradicted by public corporate filings of which this Court may take judicial notice. *See* Individuals' Memo at 4. The CFPB's Opposition fails to address this argument, or the Individuals' argument that even Managing Members are not individually liable for the actions of an LLC under Connecticut law. *See id.* Therefore, the CFPB is considered to have conceded these issues. *See Ming Hou v. Pat Kwok Lam*, No. 3:16-cv-01592, 2017 U.S. Dist. LEXIS 159170, at *6 (D. Conn. Sep. 27, 2017) ("[C]ourts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.'" (internal citations omitted)).

The CFPB also fails to address the Individuals' arguments regarding Connecticut corporate law governing piercing the corporate veil and *respondeat superior* liability, *see* Individuals' Memo at 17-19, that basic and longstanding principles of corporate law preclude the

---

[4] Unfair conduct, as defined in the CFPA, unlike deceptive conduct, may not always "sound in fraud." But here, the claims in Count 4 are based, at least in part, on allegedly false statements made to consumers. *See* Am. Compl. ¶ 97. Thus, as pled in this case, and under the case-by-case rule set forth in *Rombach*, the CFPB's claims of unfair conduct also "sound in fraud" and should be pled in accordance with Rule 9(b).

[5] The CFPB does not deny that it has already conducted a fulsome investigation of 1st Alliance and the Individual Defendants. Alleging the details necessary to satisfy Rule 9(b) should not be overly burdensome if, in fact, the CFPB could support its claims.

CFPB's attempt to hold the Individuals liable for the alleged conduct of 1st Alliance and still unnamed HLCs and SCs. The Complaint did not allege, and the CFPB's opposition still does not provide, any "exceptional circumstances" that would justify piercing the corporate veil of 1st Alliance to hold the Individuals personally liable, as required by Connecticut law. *See id.* at 18.

Because it cannot refute these basic legal principles, the CFPB argues that it is not trying to infer knowledge "merely from [the Individuals'] role in the company and awareness of the underlying general practices," and contends that "the Amended Complaint alleges actual knowledge of the illegal conduct at issue." Opp. at 20. But the plain language of the Amended Complaint itself demonstrates the contrary; the allegations against the Individuals hinge on the (erroneous) proposition they were "managing members."[6] The CFPB has not, in fact, alleged specific wrongdoing by any of the Individuals. Rather, it tries to ignore that binding Second Circuit precedent—including the case it relies upon—would require knowledge not only of "conduct" but also of the purported deceptiveness of that conduct, even under the FTC Act standard that the CFPB would apply. *See FTC v. LeadClick Media, LLC*, 838 F.3d 158, 170 (2d Cir. 2016) (requiring "knowledge of deception").

The CFPB's theory of liability—that an executive's knowledge of a company's business model, policies and procedures, and sales practices results in liability for alleged regulatory violations—would result in the liability of every executive at every mortgage company for any regulatory lapse by any employee. Such a theory of liability would be in derogation of the

---

[6] "As the Managing Members, the Individual Defendants were each responsible for and approved 1st Alliance's business model . . . ." (Am. Compl. ¶ 55); "As Managing Members, the Individual Defendants each had advance knowledge of and approved 1st Alliance policies and procedures." (¶ 56); "As Managing Members, the Individual Defendants each had knowledge of and approved 1st Alliance's sales practices and the specific functions performed by those in particular job roles . . . ." (¶57).

common law of corporate officer liability, as codified in Connecticut, and the Court should not interpret a statute to be in derogation of the common law unless that is clear from the statutory text. *See Rai v. WB Imico Lexington Fee, LLC*, 802 F.3d 353 (2d Cir. 2015).

Since the CFPB's theory of liability would result in absurdity and deviate from longstanding principles of corporate common law, the Court should reject it in favor of applying the words that Congress chose in the CFPA itself. Under that standard, the CFPB has not alleged any actionable conduct on the part of the Individuals.[7]

## III. The CFPB Failed to Establish Why the FTC Act's Standard for Individual Liability Should Apply to the CFPA.

The CFPB claims that it makes "obvious sense" to apply the FTC Act's individual liability standard to the CFPA due to the two statutes' similarities. Opp. at 16. That similar provisions may be interpreted similarly, however, does not mean that the entirety of the FTC Act should be blindly spliced onto the CFPA. Just as it would be wrong to interpret the CFPA's prohibition of "abusive" conduct by looking to the FTC Act (where the term "abusive" is not found), interpreting the CFPA's liability provision based on the FTC Act is also illogical, as the term "engage"—and its requirement of direct participation—is absent from the FTC Act. Only where the two statutes use the same terms can it be reasonably understood that Congress intended them to have the same meanings. Where the two are different, however, they must be understood differently. Otherwise, Congress need not have drafted the CFPA at all.

The CFPB cites *Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, No. 15-cv-5211, 2016

[7] Courts frequently adopt narrow statutory interpretations when a broad reading would yield ridiculous results beyond those Congress intended—results like those the CFPB seeks here. *See, e.g.*, *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021); *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).

U.S. Dist. LEXIS 177756 (S.D.N.Y. Dec. 2, 2016) and *CFPB v. Gordon*, 819 F.3d 1179, (9th Cir. 2016), in support of its position, *see* Opp. at 16, without responding to the Individuals' arguments that the rationales in these cases are flawed and otherwise unpersuasive. *See* Individuals' Memo at 14-15.[8] The CFPB has not, and cannot, point to any persuasive and relevant authority to stand for the absurdity that the FTC Act's individual liability standard should be grafted onto the CFPA.

## IV. The CFPB Failed to Address Its Deficient Pleadings

### A. Even Under a Rule 8 Pleading Standard, the CFPB Failed to Adequately Allege that the Individuals "Engaged" in Unlawful Conduct

Even under Rule 8, the CFPB's claims against the Individuals fail because the Amended Complaint substitutes generalities and conclusions for allegations the Individuals allegedly *did* anything improper. *See* Individuals' Memo at 12-14, 19-20.

The CFPB says that it lumped the Individual Defendants together in the Amended Complaint "because each engaged in the wrongdoing alleged" and cites *CFPB v. RD Legal Funding*, 332 F. Supp. 3d 729 (S.D.N.Y. 2018), in support. Opp. at 22. However, as previously explained by the Individuals (and not addressed by the CFPB), because the Individuals are "corporate officers who had different positions and responsibilities within the company," the CFPB is not permitted to lump them together in this case and *RD Legal Funding* does not apply. Individuals' Memo at 13 n.5, quoting *Bardwil Indus. v. Kennedy*, No. 19-cv-8211, 2020 U.S.

[8] The CFPB also fails to sufficiently address the impact of *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021). It is true that the court in *AMG* "did not say anything about the standard for determining when an individual can be held liable for violating the FTC Act." Opp. at 17. But the Individuals actually argued that *AMG* stands for the critical principle that common law additions to unambiguous statutes—even when long-standing and commonly accepted—are not impervious to careful examination to ensure they do not conflict with the statutory language. *See* Individuals' Memo at 15-16. *AMG* stands for the basic proposition that neither federal agencies nor the courts may usurp the role of Congress by rewriting statutory language based on perceived statutory purpose.

Dist. LEXIS 172569, at *7 (S.D.N.Y. Sep. 21, 2020). The CFPB, again, fails to address this argument or the cases the Individuals have cited.

While there are no substantive allegations against any of the Individuals, it is perhaps instructive to focus on the most egregious pleading deficiency, the absolute lack of factual allegations against Mr. Aramburu. The CFPB attempts to respond by pointing to three paragraphs, Am. Compl. ¶¶ 90, 106, 114, which do little more than summarily repeat the elements of the alleged violations, and one other paragraph, Am. Compl. ¶ 35, which mentions only "senior company leaders, including the Individual Defendants." *See* Opp. at 22. At no point does the CFPB allege, in the Amended Complaint or in the Opposition, any unlawful conduct in which Mr. Aramburu allegedly engaged, or any conversation Mr. Aramburu allegedly participated in. Nor does the CFPB explain how an executive with responsibility for Capital Markets (not Sales or Compliance), based halfway across the country, could plausibly be charged with knowledge (let alone liability) for what the CFPB alleges. The only way the CFPB's allegations against Mr. Aramburu—or the other Individuals—make sense in the context of the differences in their roles and in light of the lack of specific factual allegations, is that the CFPB is trying to establish vicarious liability as a practical matter for anyone involved in company management across the board. That is not the law.

### B. "Engage" Means More than a Corporate Position

The CFPB's interpretation of the term "engage" is also incorrect on several fronts. First, as the Individuals have already explained, *see* Individuals' Memo at 9-10, the plain meaning of "engaging in" an act or practice requires more than mere association or affiliation with another person or entity. The CFPB does not truly dispute that "engage" requires at least some

participation (*see* Opp. at 17: "but also participating in a scheme that might be carried out by someone else"); it has just failed to plead any participation by the Individuals in this case and argues that it should not have to. Neither knowing of the company's practices nor knowing of some compliance concerns amounts to personally engaging in unlawful conduct. Furthermore, the case the CFPB has cited[9]—a nonbinding case from more than forty years ago that interprets a statute not at issue here—involves affiliated *companies* rather than *individuals* and threshold questions of *personal jurisdiction* rather than *individual liability*.

Another case the CFPB cites in support of its mistaken position "that a defendant can 'engage' in an unfair or deceptive act or practice without directly participating in it," Opp. at 17, *LeadClick Media*, is an FTC Act case that does not even concern individual liability. That case uses the word "engage" incidentally, not as a matter of statutory interpretation, because the FTC Act's UDAP provision does not contain the word "engage." *See* Opp. at 18.

Ultimately, even if it were appropriate to transplant the FTC Act's individual liability provision onto the CFPA, the CFPB still has not alleged that the Individuals had any knowledge of the deceptive nature of any conduct alleged. Instead, the CFPB claims that it "is not required to allege that the Individual Defendants knew that the underlying conduct was illegal" and cites a non-controlling case to support its claim. Opp. at 21. However, controlling Second Circuit authority makes very clear that liability under the FTC Act standard is imposed only when the actor has "knowledge of the deceptive nature of the scheme." *FTC v. Moses*, 913 F.3d 297, 306 (2d Cir. 2019). The CFPB simply has not pled the elements required to establish the Individuals' liability, even under the FTC Act standard.

---

[9] *Jim Walter Corp. v. FTC*, 625 F.2d 676, 681 (5th Cir. 1980).

## V. The CFPB's Request for Leave to Amend Should be Denied

The CFPB tersely requests, in a footnote, that it be granted leave to amend if the Motion is granted, but does not give any hint as to what additional facts it would add in a second amended complaint (nor why they would have been omitted here, even after the Parties' met and conferred concerning this grounds for dismissal). Opp. at 23 n.96. Denial of a motion for leave to amend is proper when, as here, the plaintiffs "were afforded the opportunity to amend their complaint once" and have "not demonstrate[d] that any amendment would cure the defects in their pleading." *Prasad v. City of N.Y.*, 370 F. App'x 163, 165 (2d Cir. 2010) (citing *Joblove v. Barr Labs., Inc. (In re Tamoxifen Citrate Antitrust Litig.)*, 466 F.3d 187 (2d Cir. 2006).

## CONCLUSION

The CFPB brought this case against the Individuals based on the flawed premise that they were "Managing Members" who were liable for 1st Alliance's alleged regulatory violations by virtue of their position. Now that this theory has crumbled, the CFPB asserts that its sparse allegations against the company should be imputed to the Individuals because of their purported knowledge, not of any wrongdoing, but of the challenged policies. The Court should not permit the CFPB to make being a mortgage company executive into a strict liability occupation.

DATE: June 29, 2021

Respectfully submitted,

*/s/ Mitchel H. Kider*

Mitchel H. Kider, *pro hac vice*
Michael Kieval, *pro hac vice*
Jeffrey Blackwood, *pro hac vice*
WEINER BRODSKY KIDER PC
1300 19th St NW, 5th Floor
Washington, D.C. 20036
Tel: 202-628-2000
Fax: 202-628-2011

Email: kider@thewbkfirm.com
kieval@thewbkfirm.com
blackwood@thewbkfirm.com

Ross Garber
The Garber Group LLC
100 Pearl St., 14th Floor
Hartford, CT 06103
Tel: (860) 983-5145
Fax: (860) 983-5145
Email: rgarber@thegarbergroup.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Mitchel H. Kider*
Mitchel H. Kider