# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br>        Plaintiff,<br><br>v.<br><br>1ST ALLIANCE LENDING, LLC, *et al.*,<br>        Defendants. | Case No. 3:21-CV-00055-RNC |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
SECOND MOTION TO COMPEL RESPONSES TO THEIR FIRST
<u>INTERROGATORIES AND FOR RULE 37 SANCTIONS</u>**

DATE: December 15, 2022

Mitchel H. Kider, *pro hac vice*
Michael Kieval, *pro hac vice*
Jeffrey Blackwood, *pro hac vice*
Allison Scoggin, *pro hac vice*
WEINER BRODSKY KIDER PC
1300 19th St NW, 5th Floor
Washington, D.C. 20036
Tel:   202-628-2000
Fax:   202-628-2011
Email: kider@thewbkfirm.com
       kieval@thewbkfirm.com
       blackwood@thewbkfirm.com
       scoggin@thewbkfirm.com

Ross Garber
The Garber Group LLC
100 Pearl St., 14th Floor
Hartford, CT  06103
Tel: (860) 983-5145
Fax: (860) 983-5145
Email: rgarber@thegarbergroup.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

RELEVANT BACKGROUND AND HISTORY ........................................................................ 1

LEGAL STANDARD.................................................................................................................. 3

ARGUMENT ............................................................................................................................... 5

    I.    Plaintiff Must Remove Its Objections.................................................................................. 5

    II.   Plaintiff Is Required to Identify Specific Instances of Alleged Violations ........................ 6

        A.    The CFPA Applies to Specific Acts ................................................................................ 7

        B.    The Requirement to Proffer Specific Instances of Wrongdoing is Well Established..... 8

        C.    Defendants Are Entitled to Specific Instances Under Discovery Standards .................. 9

    III.  Plaintiff has Not Responded to the Interrogatories Propounded, As It Has Already Been Compelled to Do................................................................................................................ 10

        A.    Plaintiff's Responses to the Individuals' Interrogatories Are Still Deficient ............... 11

        B.    Plaintiff's Responses to 1st Alliance's Interrogatories Are Still Deficient .................. 13

    IV.  Due to Plaintiff's Refusal to Comply with the Court's Order, Defendants Seek Their Attorney's Fees .................................................................................................................. 14

CONCLUSION........................................................................................................................... 15

# INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26, 33, and 37 and Local Rule 37, Defendants 1st Alliance Lending, LLC, ("1st Alliance") and John DiIorio, Kevin St. Lawrence, and Socrates Aramburu ("the Individuals") respectfully move the Court to enforce its August 18, 2022 Order, Dkt. 100, by overruling the objections of Plaintiff Consumer Financial Protection Bureau (the "CFPB") and compelling complete responses to 1st Alliance's First Interrogatories and each of the Individuals' First Interrogatories. Defendants seek their attorney's fees for bringing this motion pursuant to Federal Rule 37(b)(2)(C) because the Court ordered Plaintiff to respond to the interrogatories in its August 18, 2022, discovery order ("Order"), Dkt. 100, but Plaintiff did not comply.

For the reasons explained below, Plaintiff should be ordered to provide complete responses to Defendants' interrogatories, free of improper multi-paragraph objections and with sufficient detail in response to the questions asked by Defendants, which directly concern the violations of law claimed by Plaintiff.

# RELEVANT BACKGROUND AND HISTORY

In February, 2022 (ten months ago), Defendants each served interrogatories on Plaintiff seeking basic factual information underlying the claims Plaintiff has asserted against them. *See* Dkt. 86-2, Exs. A–D. Plaintiff responded to each set of interrogatories with broad objections and woefully incomplete responses, many of which consisted solely (and improperly) of references to 1st Alliance's business records and third-party documents. *See* Dkt. 86-2, Exs. E–H. Defendants conveyed to their concerns regarding these deficient responses to Plaintiff in detail, yet Plaintiff modified only a single response. *See* Dkt. 86-2, Ex. I. On June 21, 2022, after

1

following the Court's specified procedures, Defendants moved to overrule Plaintiff's objections and compel complete responses to Defendants' interrogatories. Dkt. 86. Plaintiff objected to Defendants' motion, largely on the basis that it believed its responses to Defendants' contention interrogatories depended on discovery the Defendants had yet to produce. Dkt. 92. Judge Richardson heard the parties' arguments at a July 18, 2022 discovery conference before granting Defendants' motion to compel on August 18, 2022. Dkt. 100.

The Court's August 18, 2022 Order required Plaintiff to "answer the interrogatories based upon the information it currently possesses" and "supplement its answers as required by Rule 26(e) as discovery progresses." Dkt. 100. Local Rule 37 requires parties to comply with a court order within 14 days. After receiving no supplemental responses as of September 20, 2022, Defendants' counsel reached out to Plaintiff's counsel on September 20, 2022 to ascertain the status of the ordered responses. Plaintiff issued supplemental responses the following day, on September 21, 2022.

Plaintiff's supplemental responses suffer many of the same deficiencies as Plaintiff's original responses, including the assertion of various objections to *every* interrogatory (despite Judge Richardson's Order granting Defendants' motion to compel). Defendants began to raise concerns with Plaintiff's deficient and incomplete supplemental responses during a meet-and-confer on September 27, 2022 and via email on September 28, 2022. On October 7, 2022 while meeting-and-conferring with Plaintiff on the pre-filing conference for summary judgment, Defendants informed Plaintiff that the interrogatory responses were important to Defendants' anticipated motions for summary judgment. Thereafter, Defendants met and conferred with Plaintiff again on November 14, 2022 and requested that Plaintiff remove its objections from its

2

supplemental responses.  The parties conferred further concerning Plaintiff's deficient responses on November 16, 2022, but Plaintiff has declined to remove its objections and has yet to further supplement its responses.[1]

Defendants filed a motion for a discovery conference, Dkt. 125, which was held before Judge Richardson on December 8, 2022, and which addressed Defendants' intended motion as well as a separate motion Plaintiff intended to file concerning Defendants' 30(b)(6) notice.  Dkt. 134.  The conference concluded with the Court directing both parties to file their respective motions.

## LEGAL STANDARD

"Where a party fails to answer an interrogatory or fails to produce documents . . . as requested, Federal Rule of Civil Procedure 37 permits the party seeking discovery . . . to move for an order compelling an answer, designation, production or inspection."  *Bray v. Santander Bank, N.A.*, No. 3:19-cv-1759, 2021 U.S. Dist. LEXIS 109366, at *6 (D. Conn. June 3, 2021) (Richardson, Mag. J.) (quoting *In re Aggrenox Antitrust Litig.*, No. 3:14-cv-00572, 2017 U.S. Dist. LEXIS 196151, at *1 (D. Conn. Nov. 29, 2017)).  Rule 37(b) governs the imposition of sanctions for non-compliance with a court's discovery order, and provides that when a party fails to comply with a discovery order, a court may impose sanctions, including "dismissing the action or proceeding in whole or in part," *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009), or requiring the non-compliant party to "pay the reasonable expenses, including

---

[1] The parties did not specifically discuss Plaintiff's failure to provide supplemental responses to 1st Alliance's Interrogatory Number 13, and the Individuals' Interrogatory Number 5.  Blackwood Decl. ¶ 5.  These interrogatories were addressed in Defendants' motion to compel, however.  Dkt. 86.

3

attorney's fees, caused by [non-compliance]." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1177 (2d Cir. 1988); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

The District Court applies "[s]everal factors" to determine an appropriate sanction including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).  The Second Circuit provides that dismissal is generally appropriate where non-compliance is due to "willfulness, bad faith, or any fault" such as "gross negligence rather than inability to comply or mere oversight." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979); *Knox v. United* States, No. 3:12-cv-01741, 2016 U.S. Dist. LEXIS 97749, at *34 (D. Conn. July 27, 2016).  However, courts consider the failure to comply to be willful when "the court's orders have been clear," "the party has understood them," and "the party's non-compliance is not due to factors beyond the party's control." *Baba v. Japan Travel Bureau Int'l, Inc.*, 165 F.R.D. 398, 402–03 (S.D.N.Y. 1996), *aff'd*, 111 F.3d 2 (2d Cir. 1997) *accord Gui Zhen Zhu v. Matsu Corp.*, No. 3:18-cv-203, 2022 U.S. Dist. LEXIS 59517, at *37 (D. Conn. Mar. 31, 2022).

Likewise, Fed. R. Civ. P. 37(b)(2) requires either "[i]n lieu of" or "in addition" to other sanctions, "the court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney's fees," caused by non-compliance. *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177 (2d Cir. 2008); *Found. Capital Res., Inc. v. Ofonime Udo-Okon*, No. 3:21-cv-01278, 2022 U.S. Dist. LEXIS 218284, at *12 (D. Conn. Dec. 5, 2022) ("When a party 'fails to obey an order to provide or permit discovery,' the court '*must* order the disobedient

4

party [. . .] to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey the court order], unless the failure was substantially justified or other circumstances make an award of expenses unjust.'") (emphasis in original). "[T]he burden [is] on the disobedient party to avoid expenses by showing [either the] failure is justified or that special circumstances make an award of expenses unjust." *Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999).

## ARGUMENT

### I.     Plaintiff Must Remove Its Objections

In their original motion to compel interrogatory responses, Defendants moved "for an Order overruling the objections of Plaintiff . . . and compelling complete responses" to Defendant's interrogatories. Dkt. 86 at 1. Defendants' motion described in painstaking detail the deficiencies permeating Plaintiff's repetitive and non-specific objections. *See* Dkt. 86 at 7-11. In response, Plaintiff made a generalized, halfhearted assertion that it "properly objected to Defendants' contention interrogatories as overbroad, unduly burdensome, and not proportional to the needs of the case because of their timing . . . and because of their nature." Dkt. 92 at 7.

After considering both parties' arguments, including those related to Plaintiff's objections, Judge Richardson granted Defendants' motion, ordering Plaintiff to answer the interrogatories. Dkt. 100. Yet when Plaintiff supplemented its responses, it continued to improperly assert objections to every interrogatory, including, for example, that "the Bureau also objects to this interrogatory as unduly burdensome to the extent that it requests information that is as easily available to 1st Alliance as to the Bureau, because the information is found in 1st Alliance's own documents or is otherwise in 1st' Alliance's possession." Ex. A. Plaintiff's continued assertion of this objection is groundless and shows complete disregard for the Court's

5

August 18, 2022 Order.  *See* Dkt. 100 ("Here, Plaintiff has an understanding of the conduct that it alleges violated the law.  This information falls squarely within plaintiff's knowledge . . . Plaintiff must answer the interrogatories based upon the information it currently possesses[.]") (internal citations and quotations omitted).  Plaintiff must remove its objections and plainly respond to Defendants' interrogatories.

## II.      Plaintiff Is Required to Identify Specific Instances of Alleged Violations

Defendants seek discovery into particular instances of conduct that Plaintiff contends violates the Consumer Financial Protection Act ("CFPA") and other underlying federal consumer financial laws (the alleged violation of which Plaintiff claims in Count 9 of the Amended Complaint is each also a violation of the CFPA) (*See, e.g.,* Interrogatory Number 1 from 1st Alliance; Interrogatory Number 2 from each Individual).  Plaintiff was ordered to provide this information, to the extent that it exists, nearly four months ago.  Dkt. 100.  Yet Plaintiff refuses to comply with the Court's Order on the illegitimate basis that it need not prove specific instances of conduct.  For example, in its supplemental response to Interrogatory Number 1 from 1st Alliance, Plaintiff objects that identifying each violation of Regulation Z as alleged in Count 1 of the Amended Complaint (in other words, complying with the Court's order), would be unduly burdensome because "potentially tens of thousands of consumers were affected" by the alleged conduct "and the Bureau is not required to make any such individualized showing in connection with its cause of action" under Regulation Z.

Importantly, *Defendants did not ask Plaintiff to identify what burden of proof it thinks it ultimately needs to meet in this case.*  Defendants simply asked Plaintiff to identify particular instances of conduct that allegedly underlie the various statutes described in the Amended

6

Complaint, and the Court ordered it to do so.  Regardless of what the CFPB claims it needs to ultimately prove in this case, Defendants are entitled to the requested information at this stage because it is relevant to Defendants' defenses.

### A. The CFPA Applies to Specific Acts

Under the plain language of the CFPA, specific instances of conduct are requisite to proving a violation.  The CFPA prohibits unfair, deceptive, or abusive acts and practices ("UDAAP") "in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service."  12 U.S.C. § 5531.  Under the CFPA, a "violation" means "any <u>act or omission</u> that, if proved, would constitute a violation of any provision of Federal consumer financial law." 12 U.S.C. § 5561(5) (emphasis added).  The CFPA does not prohibit covered persons from having business models or policies that *could theoretically* constitute violations—if the CFPB wants to prove even a single violation of the CFPA, it is required to proffer a particular "act or omission" that *actually* violated the statute.  In other words, the CFPB has to show what *actually happened*—not merely what *could have happened.*

Moreover, beyond establishing whether a violation of the CFPA occurred at the outset, Plaintiff must also proffer specific instances of conduct in order to claim statutory penalties, which are assessed for "any <u>act or omission</u>" that violates the CFPA, for each day the violation continues.  12 U.S.C. § 5565(c)(1) (emphasis added).  The CFPA has three tiers of penalties for UDAAP violations: (a) $5,000 per day for strict liability, (b) $25,000 per day for "reckless" violations, or (c) $1,000,000 per day for "knowing" violations. 12 U.S.C. § 5565(c)(2).  Plaintiff alleges in the Amended Complaint that Defendants' purported misconduct occurred from 2015 to

2019, and that it is seeking disgorgement of fees and civil money penalties, among other penalties. *See* Dkt. 27, ¶ 2, and "Demand for Relief." Plaintiff cannot possibly establish, and Defendants cannot possibly refute, day-to-day liability without particular instances of conduct Plaintiff alleges violated the CFPA.

Furthermore, Plaintiff's awareness of the relevance of particularized information in this case is demonstrated by Plaintiff's own discovery requests: Plaintiff has asked for (and received) extensive loan-level and transaction-specific data of approximately 7,600 loan originated by 1st Alliance from 2015–2019, including certain fees collected in connection with each of those transactions. Plaintiff is planning (or considering) to seek disgorgement of some or all of those fees. As such, Defendants are entitled to know each "act or omission" that Plaintiff contends constitutes a violation and for which Plaintiff is seeking a penalty or disgorgement.

### B. The Requirement to Proffer Specific Instances of Wrongdoing is Well Established

In other cases involving the CFPB and allegations of consumer harm, courts have soundly rejected the CFPB's repeated attempts to claim consumer harm without providing discovery on specific instances of alleged wrongdoing (as the CFPB also attempts in this case). *See, e.g., Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols.,* Civil Action No. 1:15-cv-859 (N.D. Ga. Feb. 10, 2017) (Dkt. 376 at 3) ("If Plaintiff's position is that it may rely on representative consumer complaints to prove its claims against Global Connect, then Plaintiff must identify the specific complaints that it intends to rely on as representative. If that is not Plaintiff's position, then it must prepare to testify about all consumer complaints that refer to or name Global Connect."); *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC, et al.,* No. 3:13-cv-1047 (W.D. Ky. June 26, 2016) (Dkt. No. 119 at 15) ("While the initial deposition topics

8

may involve potentially hundreds of files, this magnitude is unavoidable given the nature of the CFPB's own claims.  **It would be decidedly ironic if the CFPB could rely upon the very magnitude of its own allegations to avoid providing proof to support them."**) (emphasis added)).  This Court should similarly reject the CFPB's attempt to flout this Court's Order and circumvent these previous rulings against it in other jurisdictions.

### C. Defendants Are Entitled to Specific Instances Under Discovery Standards

As explained above, the Court need not decide on this motion the methods by which Plaintiff ultimately has to prove its case.  The deficiency of Plaintiff's interrogatory responses is a matter of discovery, and Rule 26's broad relevance standard plainly entitles Defendants to the information sought, which is relevant and necessary to Defendants' defenses even if Plaintiff claims it is not relevant to its own theory of the case.

> No party 'possess[es] the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case.'  Instead, the Federal Rules specify that any information not exempted by privilege or court order may be discoverable to the extent that it 'may [be] use[d] to support its claims or defenses.'  Thus, 'it matters not for the purpose of discovery which side's theory of the case might ultimately be proven correct. What matters is that each side is entitled to pursue intelligible theories of the case and [neither party can] . . . by their sole insistence, declare evidence undiscoverable or irrelevant merely because it does not fit into their own theory of the case.'

*Xchange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-CV-54, 2015 U.S. Dist. LEXIS 21655, at *7 (N.D.N.Y. Feb. 24, 2015) (citing *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F3d 919, 925–26 (8th Cir. 2014); Fed. R. Civ. P. 26(a)(1)(A)).  *See also McDonald v. Hardy*, 821 F.3d 882, 890 (7th Cir. 2016) ("Litigants, however, cannot ignore legitimate discovery requests based on a unilateral belief that flouting the rules of procedure will not harm their opponents, and

9

continued intransigence after the district court has *compelled* compliance is inexcusable.") (emphasis in original)).

One particular use for the information sought from Plaintiff is to contradict the CFPB's claims that 1st Alliance permitted unlicensed employees to perform activities requiring licensure as a mortgage loan officer ("MLO") in every state in which the company operated. *See* Dkt. 27, ¶¶ 70–73. For example, in Alaska, 1st Alliance originated eight loans between 2015 and 2019. In Alaska, the activities requiring licensure as an MLO are "tak[ing] a mortgage loan application; or offer[ing] or negotiat[ing] terms of a mortgage loan." Alaska Stat. § 06.60.990(24)(A). To defeat Plaintiff's claim that 1st Alliance violated Alaska's MLO licensing provision and the Individual Defendants are liable in connection with that violation, Defendants need to know which, if any, of the eight transactions that occurred in Alaska Plaintiff contends violated the MLO licensing provision.

### III. Plaintiff has Not Responded to the Interrogatories Propounded, As It Has Already Been Compelled to Do

Despite Judge Richardson's previous order compelling Plaintiff to "answer the interrogatories based upon the information it currently possesses," such as "its understanding of the conduct that it alleges violated the law," Dkt. 100, Plaintiff persists in its efforts to avoid directly answering Defendants' interrogatories, instead lecturing at length about its own theory of the case. Simply put, Plaintiff has not meaningfully answered the questions Defendants asked. In fact, in some instances, Plaintiff refused to supplement its answer to a particular interrogatory entirely.

For example, Plaintiff omitted responses to Interrogatory Number 5 from its supplemental responses to Mr. DiIorio, Mr. St. Lawrence, and Mr. Aramburu. Additionally,

Plaintiff entirely omitted 1st Alliance's Interrogatory Number 13.  Defendants included these interrogatories in their motion to compel, and Plaintiff was obligated to supplement its response.

Below, Defendants highlight a few examples of evasive or otherwise inappropriate responses to interrogatories for each Defendant, but Plaintiff's supplemental responses to *every* interrogatory subject to Defendants' motion to compel suffer similar deficiencies.

### A.  Plaintiff's Responses to the Individuals' Interrogatories Are Still Deficient

At the outset, Plaintiff's supplemental responses to each of the Individuals' interrogatories are inappropriately identical, with the only differences being each Individual's name and job title.  *See* Exs. B, C, D.  Due to the particularized nature of Defendants' interrogatories, Plaintiff must do more than copy and paste its responses from one Individual to another—instead, Plaintiff is obligated to respond to each Individual's discovery requests with the information it has regarding that particular Individual.

Interrogatory Number 2(c) to each Individual is a prime example of Plaintiff's inability to give a simple answer to the interrogatory propounded.[2]  Each Individual seeks "the material facts" that Plaintiff contends show the Individual's "actual knowledge" of an allegation contained in Count 3 of the Amended Complaint, specifically in paragraph 82.  Instead of answering each Individual's interrogatory, as propounded, with a straightforward answer, Plaintiff first "construes" the interrogatory to mean something that better suits Plaintiff's theory of the case.  Plaintiff objects for five continuous paragraphs, including an objection that Plaintiff "need not offer individual evidence of consumers affected by" the unfair acts and practices alleged in the Amended Complaint.  When Plaintiff finally gets around to responding to this

---

[2] The Individual Defendants did not move to compel responses to interrogatory numbers 1, 2(a) and 2(b), or 6.

interrogatory, it spends more than two full pages explaining its theory of liability against 1st Alliance before addressing each Individual only in the *final* paragraph of its response, and then only vaguely explaining the Individual's alleged awareness of the company's business model, alleged role in designing and executing the company's policies, and theoretical "access" to the findings of compliance personnel. At *no* point does Plaintiff answer the *actual* question asked: what material facts, if any, does Plaintiff contend show each Individual's *actual knowledge* of the conduct alleged in paragraph 82 of the Amended Complaint? If the answer is "none," Plaintiff needs to say so. Plaintiff's supplemental responses to each Individual's Interrogatory Numbers 3 and 4 are substantially similar in their deficiencies.

Plaintiff's supplemental response to each Individual's Interrogatory Number 7 displays the same deficiencies highlighted above.[3] However, in this response, Plaintiff adds another level of impermissible vagueness not only by failing to provide the Individuals with the requested details regarding the damages allegedly suffered by certain consumers, but also by adding a new column listing *unspecified and unsubstantiated* "emotional damages" for each consumer. Defendants are now even further away from understanding Plaintiff's contentions regarding damages than they were *before* the Court ordered Plaintiff to supplement its responses.

Plaintiff's supplemental responses to each Individual's Interrogatory Numbers 8–10 merely repeat the same sluggish references to Plaintiff's Damages Analysis and noncommittal answers regarding restitution, penalties, and disgorgement as its original responses.

In sum, Plaintiff's responses to the Individuals' Interrogatory numbers 2(c), 3, 4, 7, 8, 9, 10, remain deficient, and since the August 18, 2022 Order was entered, Dkt 100, Plaintiff has

---

[3] The deficiencies in this supplemental response apply equally to Plaintiff's supplemental response to 1st Alliance's Interrogatory Number 12, which seeks additional details regarding damages allegedly attributable to 1st Alliance.

still failed to supplement its answer to the Individuals' Interrogatory Number 5. The Individuals each deserve answers to their interrogatories as they were propounded, and Plaintiff is obligated to respond plainly, without objections, lengthy discourse, or evasive sidestepping.

### B. Plaintiff's Responses to 1st Alliance's Interrogatories Are Still Deficient

Interrogatory Number 1 seeks details regarding the Regulation Z violations alleged in Count 1 of the Amended Complaint. Plaintiff's supplemental response consists of three paragraphs of objections followed by a lengthy explanation of its theory of liability, claiming that it "is not required to make any such individualized showing" and improperly pasting entire paragraphs of its Amended Complaint when it does get around to responding. *See* Ex. A.

Interrogatory No. 2 from 1st Alliance simply asks the Bureau to identify the state SAFE Act violations underlying Count 1, including basic details such as the date and time of the violation, and the 1st Alliance employee involved in the violation. Yet, Plaintiff's response does not clearly set forth a *single* violation. No dates are provided. No employees are identified. Despite the Court's Order, Plaintiff continues to object to the very subject matter of the information sought by the interrogatory. *See e.g.,* Ex. A, Supp. Response No. 2 ("The Bureau objects to this interrogatory as overbroad, unwarranted, unduly burdensome, and not proportional to the needs of the case as 1st Alliance requests the identification of "each violation," "the date, time, and place where the violation . . . occurred," and each specific "SC/HLC that engaged in the conduct," when potentially tens of thousands of consumers were affected by 1st Alliance's unlawful violations of § 1026.36(f)(2) and scores of 1st Alliance SCs and/or HLCs were associated with these violations, and the Bureau is not required to make any such individualized showing in connection with its cause of action under 12 C.F.R. § 1026.36(f)(2).").

13

Plaintiff's responses to 1st Alliance's Interrogatory Numbers 2, 3, 4, 5, 6, 7, 8, 9, 12 are substantially similar in their deficiencies, and since the August 18, 2022 Order was entered, Dkt 100, Plaintiff has still failed to supplement its answers to Interrogatory Number 13.

## IV.  Due to Plaintiff's Refusal to Comply with the Court's Order, Defendants Seek Their Attorney's Fees

Rule 37(b) provides that when a party fails to comply with a discovery order, a court may impose sanctions, including "dismissing the action or proceeding in whole or in part" or requiring the non-compliant party to "pay the reasonable expenses, including attorney's fees, caused by [non-compliance]." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1177 (2d Cir. 1988); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

Here, the Court ordered Plaintiff to respond to the interrogatories on August 18, 2022. Plaintiff served late, deficient, and incomplete responses on September, 21, 2022, and has continued to maintain meritless objections even after the Court ordered it to respond with all information in its possession.  Parties have an obligation to comply with discover orders, and when they "flout that obligation they . . . must suffer the consequences of their actions." *Armamburu v. Healthcare Fin. Servs.*, CV 2002-6535, 2007 U.S. Dist. LEXIS 49039, at *13–14 (E.D.N.Y. July 6, 2007) ("An award of reasonable fees incurred in bringing a motion to compel discovery is the least harsh of all the sanctions allowed under Rule 37. [. . .] Under Rule 37, 'a finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees.'").  Accordingly, Defendants move the Court for an award of their reasonable attorney fees and expenses incurred in bringing this motion.

14

**CONCLUSION**

Defendants have the right to know the factual basis for the CFPB's claims so that they can prepare their defense.  The CFPB obstinately refuses to provide meaningful factual responses to the Defendants' interrogatories and continues to maintain meritless objections.  The CFPB should be ordered to comply with this Court's previous Order and answer Defendants' interrogatories completely without objection.  Because Defendants' first motion to compel was already granted, the CFPB should be should be ordered to pay the expenses Defendants incurred in bringing this motion.

DATE: December 15, 2022                                   Respectfully submitted,

                                               _/s/ Jeffrey P. Blackwood_
Mitchel H. Kider, *pro hac vice*
Michael Y. Kieval, *pro hac vice*
Jeffrey P. Blackwood, *pro hac vice*
Allison M. Scoggin, *pro hac vice*
WEINER BRODSKY KIDER PC
1300 19th St NW, 5th Floor
Washington, D.C. 20036
Tel:    202-628-2000
Fax:    202-628-2011
*kider@thewbkfirm.com*
*kieval@thewbkfirm.com*
*blackwood@thewbkfirm.com*
*scoggin@thewbkfirm.com*

Ross Garber
The Garber Group LLC
100 Pearl St., 14th Floor
Hartford, CT  06103
Tel: (860) 983-5145
Fax: (860) 983-5145
*rgarber@thegarbergroup.com*


*Counsel for Defendants*

15

16