## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | &#124; | |
| | &#124; | |
| PLAINTIFF, | &#124; | |
| v. | &#124; | Civil Action No.: 3:21-0055 (RNC) |
| | &#124; | |
| 1ST ALLIANCE LENDING, LLC, *et al.,* | &#124; | January 31, 2024 |
| | &#124; | |
| DEFENDANTS. | &#124; | |
| | &#124; | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION IN LIMINE FOR APPLICATION OF COLLATERAL ESTOPPEL TO
## PRECLUDE RELITIGATION OF FACTUAL FINDINGS

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND......................................................... 2

I.    Connecticut Department of Banking's Administrative Proceedings ................................. 2

       A.    CTDOB's Factual Allegations, Contentions, and Legal Determinations .............. 2

       B.    The Superior Court of Connecticut Has Reviewed and Affirmed The CTDOB
             Order. ................................................................................................................... 6

II.   This District Court Matter........................................................................................... 7

LEGAL STANDARDS .................................................................................................... 8

I.    Motion in Limine ........................................................................................................ 8

II.   Collateral Estoppel...................................................................................................... 9

ARGUMENT .................................................................................................................. 12

I.    1st Alliance Should Be Precluded From Disputing the Findings of Fact in the
      CTDOB Order............................................................................................................ 12

       A.    Identical Issues Exist In the CTDOB Proceeding and This District Court
             Proceeding.......................................................................................................... 12

       B.    The Pertinent Issues Were "Actually Litigated" in the Connecticut
             Proceedings ........................................................................................................ 15

       C.    The Factual Issues Were "Necessarily Determined" In The CTDOB
             Proceedings ........................................................................................................ 16

       D.    There Was A "Full and Fair Opportunity" to Litigate the Issues in the
             Connecticut Proceedings And Application of Collateral Estoppel Would Be
             Fair Under the Circumstances of this Case.......................................................... 17

II.   DiIorio and St. Lawrence Should Be Precluded from Contesting The Findings in the
      CTDOB Order and the Superior Court Order.............................................................. 20

CONCLUSION................................................................................................................ 22

| Ex | Description |
|---|---|
| 1 | Connecticut Department of Banking (CTDOB) Amended Notice of Intent to Revoke License, issued July 5, 2019 |
| 2 | CTDOB's Findings of Fact, Conclusions of Law, and Order, issued April 16, 2021 |
| 3 | CTDOB's Supplemental Decision, issued April 5, 2022 |
| 4 | Superior Court of Connecticut Order affirming April 16, 2021, CTDOB Order, issued April 19, 2023<br><br>Also available at *1st All. Lending LLC v. Dep't of Banking*, No. HHB-CV-21- 6066325, 2023 WL 3071205 (Conn. Super. Ct. Apr. 19, 2023) |
| 5 | Bureau's Amended Complaint (Dkt. 27), filed April 1, 2021 |

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                            <u>**Pages**</u>

Aetna Casualty & Surety Co. v. Jones,
  596 A.2d 414 (Conn. 1991) ........................................................................................ 11

*Astoria Federal Savings & Loan Assoc. v. Solimino*,
  501 U.S. 104 (1991) .................................................................................................. 10

*B. Metcalf Asphalt Paving, Inc. v. Town of N. Canaan Planning & Zoning Comm'n*, Civ.,
  No. LLI-CV-19-6023364-S, 2020 Conn. Super. LEXIS 2672 (Conn. Super. Ct. Apr. 20, 2020) .... 19, 17

*Bifolck v. Philip Morris USA Inc.*,
  936 F.3d 74 (2d Cir. 2019) ........................................................................................ 12

*Capitol Recs., LLC v. ReDigi Inc.*,
  2015 WL 5076457 (S.D.N.Y. Aug. 27, 2015) ............................................................ 20

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
  56 F.3d 359 (2d Cir.1995) .......................................................................................... 20

*Coan v. Dunne*,
  2021 WL 3012678 (D. Conn. July 15, 2021), *aff'd*, No. 21-2012, 2023 WL 7103275 (2d Cir. Oct. 27,
  2023) ........................................................................................................................ 11

*Cobb v. Pozzi*,
  363 F.3d 89 (2d Cir. 2004) .......................................................................................... 9

*Couloute v. Bd. of Educ. of Town of Glastonbury*,
  252 A.3d 420 (Conn. App. 2021) ............................................................................ 9, 20

*Faraday v. Blanchette*,
  596 F. Supp. 2d 508 (D. Conn. 2009) ................................................................... 16, 19

*Fink v. Magner*,
  988 F. Supp. 74 (D. Conn. 1997) .............................................................................. 21

*Highland Cap. Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ......................................................................... 9

*In re Teltronics Servs., Inc.*,
  762 F.2d 185 (2d Cir. 1985) ...................................................................................... 22

*Kreager v. General Electric Co.*,
  497 F.2d 468 (2d Cir. 1974) ...................................................................................... 22

*Kremer v. Chemical Constr. Corp.*,
  456 U.S. 461 (1982) .................................................................................................. 10

*LaBow v. Rubin*,
  95 Conn. App. 454 (2006) .......................................................................................... 11

*Lighthouse Landings, Inc. v. Connecticut Light and Power Company*,
  300 Conn. 325 (2011) ................................................................................................ 15

*Luce v. United States*,
  469 U.S. 38 (1984) ...................................................................................................... 9

*Matusick v. Erie Cty. Water Auth.*,
  757 F.3d 31 (2d Cir. 2014) ..................................................................................12

*Meehan v. Town of E. Lyme*,
  919 F. Supp. 80 (D. Conn. 1996) *aff'd*, 104 F.3d 352 (2d Cir. 1996) ....................12

*One Barberry Real Est. Holding, LLC v. Maturo*,
  2023 WL 386829 (D. Conn. Jan. 25, 2023) ...........................................................10

*Palmer-Williams v. United States*,
  699 F. App'x 1 (2d Cir. 2017) ................................................................................11

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996) ......................................................................................8

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ...........................................................................................9, 11

*Pet v. Dep't of Health Servs.*,
  228 Conn. 651, 638 A.2d 6 (1994) .........................................................................18

*Proctor v. LeClaire*,
  715 F.3d 402 (2d Cir. 2013) ...................................................................................11

*Roll-A-Cover, LLC v. Cohen*,
  2012 WL 6568463 (D. Conn. Dec. 17, 2012) ........................................................10

*Sellers v. Work Force One, Inc.*,
  886 A.2d 850 (2005) .........................................................................................15, 16

*Sparano v. JLO Auto., Inc.*,
  2022 WL 266159 (D. Conn. Jan. 29, 2022) .............................................................8

*Svenningsen v. Ultimate Prof'l Grounds Mgmt.*,
  2017 U.S. Dist. LEXIS 113617 (S.D.N.Y. July 20, 2017)....................................21

*Trikona Advisers, Ltd. v. Chugh*,
  846 F.3d 22 (2d Cir. 2017) .....................................................................................20

*United States v. Bradley*,
  2022 WL 1708400 (D. Conn. May 27, 2022) ..........................................................9

*Williams v. Rushmore Loan Mgmt. Servs. LLC*,
  2017 WL 822793 (D. Conn. Mar. 2, 2017)..............................................................9

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
  425 F. Supp. 2d 484 (S.D.N.Y. 2006) ...................................................................21

*Yan Yam Koo v. Dep't of Buildings of City of New York*,
  218 F.Appx. 97 (2d Cir. 2007) ...............................................................................10

## **Statutes**

12 U.S.C. § 5101.................................................................................................3, 8

12 U.S.C. § 5103(a)(1)(B) .......................................................................................3

12 U.S.C. § 5536(a)(1)(A) .......................................................................................8

12 U.S.C. §§ 5531(a), 5536(a)(1)(B) .......................................................................8

12 USC 5301 .................................................................................................................4

15 U.S.C. § 1681 ..........................................................................................................6

15 U.S.C. § 1691 ..........................................................................................................6

28 U.S.C. § 1738 ........................................................................................................10

Conn. Gen. Stat. § 4-166 ...........................................................................................18

Conn. Gen. Stat. § 4-176e ..........................................................................................19

Conn. Gen. Stat.  at § 4-177 .......................................................................................19

Conn. Gen. Stat. § 36a-50 ...........................................................................15, 16, 18

Conn. Gen. Stat. § 36a-50(a)(3) .................................................................................18

Conn. Gen. Stat. § 36a-485 ..........................................................................................4

Conn. Gen. Stat. § 36a-486(b) ......................................................................................3

Conn. Gen. Stat. § 36a-496 ..........................................................................................4

Conn. Gen. Stat. § 36a-498e .........................................................................................4

Conn. Gen. Stat. § 36a-678(a) ......................................................................................4

## Regulations

12 C.F.R. § 1002 ..........................................................................................................6

12 C.F.R. § 1008 ..........................................................................................................3

12 C.F.R. § 1008.103(a) ...............................................................................................3

12 C.F.R. § 1026.36(f)(2) ...............................................................................3, 6, 8, 14

Reg Z §§ 1026.19(e)(2)(ii), (iii).....................................................................................8

## <u>INTRODUCTION</u>

The Court should apply collateral estoppel—also known as issue preclusion—to bar each Defendant from introducing evidence or argument disputing or relitigating issues of fact already resolved by the Connecticut Department of Banking (CTDOB) in its April 16, 2021, "Findings of Fact, Conclusions of Law, and Order" (CTDOB Order).   The CTDOB Order contains 230 paragraphs of factual findings regarding the conduct and decision-making of Defendant 1st Alliance Lending, LLC (1st Alliance), its two most senior executives—Defendants John DiIorio and Kevin St. Lawrence—and the company's employees.

The Findings of Fact within the CTDOB Order consist of factual determinations that are supported by citations to evidence and relate to the following issues: (i) 1st Alliance's practices related to taking residential mortgage loan applications; (ii) 1st Alliance's practices related to the offering and negotiating of mortgage loan terms; (iii) 1st Alliance's practices regarding provision of a "Loan Estimate," i.e., a good faith estimate of the loan's costs and fees (e.g., interest rate, monthly payment, closing costs); and (iv) 1st Alliance's practices regarding provision of "adverse action" notices after denying a request for a loan. The CTDOB's determinations made in relation to these issues encompass all 230 paragraphs contained in the CTDOB Order's Findings of Fact. The Findings of Fact serve as the factual predicate for the CTDOB's determination that 1st Alliance committed multiple violations of Connecticut law and—just as importantly—the Findings of Fact also resolve many of the same factual issues that this Court will need to resolve before it can determine whether Defendants committed the violations of Federal law alleged by the Bureau.

Where, as here, the issues for preclusion were extensively litigated, decided, and necessary to the determination made in the prior proceeding, *and* the agency's final decision has been affirmed by a state court, applying collateral estoppel to preclude relitigating the findings of fact

is not only legally justified and fair, but also serves collateral estoppel's goals of promoting judicial economy, preserving judicial resources, and preventing inconsistent judgments that could undermine the judicial system.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **CONNECTICUT DEPARTMENT OF BANKING'S ADMINISTRATIVE PROCEEDINGS**

A.    **CTDOB's Factual Allegations, Contentions, and Legal Determinations**

On December 5, 2018—after completing a months' long examination of 1st Alliance's loan origination practices—the CTDOB issued a "Notice of Intent to Revoke Mortgage Lender License" (hereinafter, December 2018 Notice), which was superseded by an "Amended and Restated Notice of Intent to Revoke Mortgage Lender License" (hereinafter, Amended Notice) issued by CTDOB on July 5, 2018.[1] (*See* Ex. 2 at 1: CTDOB Order (summarizing procedural history). The Amended Notice detailed the factual allegations, contentions, and statutory bases upon which the CTDOB intended to revoke 1st Alliance's mortgage license and issue other penalties. (*See generally* Ex. 1: Amended Notice.)

Within the Amended Notice, the CTDOB alleged that 1st Alliance permitted and aided its employees called Home Loan Consultants (HLCs) to act as "loan originators" without first obtaining a loan originator license, which would be violation of state laws that require each mortgage loan originator (MLO) servicing a consumer in Connecticut to obtain and maintain (i) a state-issued loan originator license and (ii) registration with the Nationwide Mortgage Licensing

---

[1]    The full title of the December 2018 notice was "Notice of Intent to Revoke Mortgage Lender License, Notice of Intent to Issue Order to Cease and Desist and Notice of Intent to Fine."

The full title of the July 2019 notice was: "Amended and Restated Notice of Intent to Revoke Mortgage Lender License" (hereinafter, Amended Notice), Amended and Restated Notice of Intent to Issue Order to Cease and Desist and Amended and Restated Notice of Intent to Impose Civil Penalty." (Ex. 2 at 1: CTDOB Order.)

System and Registry (NMLS) prior to engaging in "loan originator" activities. The state law—known colloquially as the Connecticut SAFE Act—defined "loan originator" activities as taking a mortgage loan application or offering and negotiating mortgage loan terms.[2]  The allegations regarding the use of unlicensed loan originators would, if proven, also constitute violations of Connecticut laws prohibiting the acceptance of loan applications from unlicensed loan originators and state laws requiring compliance with Federal Regulation Z, 12 C.F.R. § 1026.36(f)(2), which requires loan originator organizations to ensure that each individual loan originator it employs obtains and maintains a MLO license and NMLS registration if licensure and registration is required by the Federal SAFE Act, the Federal Act's implementing regulation (Regulation H, 12 C.F.R. § 1008, *et seq.*), or a State SAFE Act. (*See* Ex. 2 at pp. 32-36: CTDOB Order (analyzing Federal SAFE Act and Federal Regulation H, and discussing their import on claims alleging

---

[2]  The "Connecticut SAFE Act" is a state law that implements the Federal Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (SAFE Act), 12 U.S.C. § 5101, *et seq.*. The Federal SAFE Act strictly prohibits "an individual" from "engag[ing] in the business of a loan originator without first . . . obtaining[] and maintaining . . . a license and registration as a State-licensed loan originator[.]" (*See* 12 U.S.C. § 5103(a)(1)(B)). The Federal SAFE Act and Regulation H, 12 C.F.R. § 1008, *et seq.* "encouraged" each State to enact legislation that requires individuals to obtain a state-issued MLO license and register with the NMLS prior to engaging in the business of a loan originator. (*See* 12 U.S.C. § 5101; 12 C.F.R. § 1008.103(a).) Connecticut enacted its SAFE Act in early 2009, and the statute became effective on July 30, 2009.

*See* Conn. Gen. Stat. §§ 36a-486(b) ("No person licensed as a mortgage lender . . . shall engage the services of a mortgage loan originator . . . required to be licensed under this section unless such mortgage loan originator . . . is licensed under section 36a-489. An individual . . . shall be deemed to be engaged in the business of a mortgage loan originator if such individual: (A) Acts as a mortgage loan originator in connection with any residential mortgage loan on behalf of a licensee . . . or (B) makes any representation to the public through advertising or other means of communication that such individual can or will act as a mortgage loan originator on behalf of a licensee[.]").

violations of Connecticut SAFE Act); *see generally* Ex. 1: Amended Notice (detailing allegations and quoting Connecticut laws).)[3]

The Amended Notice also alleged that 1st Alliance repeatedly required consumers to submit documents verifying information in their loan application before the company would provide a Loan Estimate, which would constitute a violation of Connecticut laws that require loan originators to provide a consumer with a Loan Estimate *prior to* requiring verifying documents. (*See* Ex. 2 at pp. 1, 37-38: CTDOB Order (discussing Federal and State disclosure requirements that mandate issuance of a Loan Estimate). 1st Alliance was also accused of failing to provide an "adverse action" notice to all consumers who it denied a loan, which would constitute a violation of Connecticut laws mandating such notices and state laws mandating compliance with Federal notice requirements established by the Federal Consumer Credit Protection Act. (*See* Ex. 2 at pp. 1, 36: CTDOB Order (discussing requirements of the Fair Credit Report Act and allegations against 1st Alliance); *see generally* Ex. 1: Amended Notice (detailing allegations related to Loan Estimates and adverse action notice and quoting applicable Connecticut laws).[4]

The administrative process that preceded the CTDOB Order spanned more than two years, included a 15-day administrative hearing, and generated an evidentiary record spanning more than 5000 pages. During the proceedings, 1st Alliance was given an opportunity to conduct extensive

---

[3] *See* Conn. Gen. Stat. § 36a-498e ("No person . . . who is required to be licensed and is subject to [Conn. Gen. Stat.] 36a-485 to 36a-498h . . . shall fail to establish, enforce and maintain policies and procedures reasonably designed to achieve compliance with subsection (a) of this section [describing prohibited practices, including unlicensed personnel]."); Conn. Gen. Stat. § 36a-496 (reflecting prohibitions against accepting loan applications and referrals from unlicensed mortgage brokers or mortgage loan originator).

[4] Conn. Gen. Stat. §§ 36a-678(a) (reflecting Connecticut law mandating that "each person shall comply with all provisions of the Consumer Credit Protection Act that apply to such person, including the delivery of integrated disclosures required by 12 USC 5301 *et seq.* and implemented through regulations adopted by the Bureau of Consumer Financial Protection.").

discovery, present evidence and argument on the factual and legal issues, take testimony under oath, and provide post-hearing briefing. (*See* Ex. 2 at pp. 45-42: CTDOB Order (reflecting docket of administrative proceedings—including hearing dates, discovery request issuance and response dates, motion and hearing brief filing dates—spanning from the issuance of the December 2018 Notice through the January 12, 2021, filing of 1st Alliance's notice of appeal in the Superior Court of Connecticut); *id.* at 1-29 (reflecting summary of procedural history, and citations to record evidence supporting factual findings).)

On April 16, 2021, the CTDOB issued its Order, which resolved questions regarding a myriad of facts related to the CTDOB's allegations. Specifically, the CTDOB determined that, based on a preponderance of the evidence, 1st Alliance's conduct—as engaged in by the company, its owners, and its employees—constituted violations of multiple Connecticut laws. In so determining, the CTDOB found the following facts, all of which constituted or contributed to a violation of Connecticut law:

1. HLCs solicited and obtained extensive information from consumers—e.g., income, assets, debts, current mortgage information (if applicable), address of desired property, desired loan amount, and social security number(s) of borrowers and co-borrowers—for the purpose of 1st Alliance determining the consumer's eligibility for a 1st Alliance loan;[5]

2. HLCs engaged in discussions with consumers regarding prequalified and approved loan terms—e.g., types of loans being offered, specific interest rates, dollar amount of loans, length/term of loans, and down payment amounts—via email exchanges, transmitting prequalification letters, telephone calls, and other methods of communication;

3. 1st Alliance—including its owners and members of its senior management—knew that 1st Alliance never required HLCs to possess a MLO license, that HLCs generally did not

---

[5] The HLC position had several other names between its 2009/2010 creation and the company's closure in October 2019. Initially, HLCs were called "Inquiry Specialist," and were later renamed to "Submission Coordinators," and then "Home Loan Consultants." According to DiIorio, the position titles/terms were used synonymously by 1st Alliance. (*See* Ex. 2 at pp. 7, 12 at ¶¶ 30, 60: CTDOB Order.)

possess an MLO license, and that HLCs were taking mortgage loan applications and negotiating mortgage loan terms for 1st Alliance;

4.    1st Alliance abetted unlicensed individuals (i.e., HLCs) in the taking of loan applications and offering and negotiating loans, in violation of state law requiring compliance with the Connecticut SAFE Act and Reg Z § 1026.36(f)(2);

5.    1st Alliance accepted loan applications taken by its unlicensed HLCs;

6.    1st Alliance failed to act in compliance with "other state or federal law applicable to its business" as a mortgage loan originator;

7.    1st Alliance failed to provide Loan Estimates prior to requiring consumers to submit documents verifying loan application information; and

8.    1st Alliance failed to issue "adverse action" notices required by Federal law, specifically the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, *et seq.* and its' implementing regulation: Regulation B, 12 C.F.R. § 1002, *et seq.*, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*.

(Ex. 2 at pp. 42-43: CTDOB Order (stating CTDOB's final legal conclusions regarding which Connecticut laws 1st Alliance violated).)

### B.    The Superior Court of Connecticut Has Reviewed and Affirmed The CTDOB Order.

On April 19, 2023—after review of the administrative record, the parties' briefing, and oral arguments—the Superior Court of Connecticut determined that the record "contain[ed] substantial evidence that [the] violations occurred," (Ex. 4 at 9: Superior Court Order), and that 1st Alliance "understood" that it had "purposefully designed its business operations in a manner that increased the likelihood of violations[,]" (*id.* at 19). The Court explicitly rejected each ground for appeal asserted by 1st Alliance, finding that 1st Alliance had

> failed to establish that the [CTDOB's Order] was (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law: (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the

6

> whole record; or (6) arbitrary or capricious or characterized by
> abuse of discretion or clearly unwarranted exercise of discretion.

(*Id.* at 20.) In so ruling, the Court upheld in full the CTDOB Order and dismissed 1st Alliance's

appeal. (*Id.*) On May 9, 2023, 1st Alliance appealed the April 19, 2023, Superior Court decision.

At the time of this filing, that appeal remains pending in the Connecticut Appellate Court. *See*

Docket, *1st All. Lending LLC v. Dep't of Banking*, No. AC 46493 (Conn. App. Ct.).

## II.   THIS DISTRICT COURT MATTER

On January 1, 2021, after completion of its investigation into 1st Alliance's mortgage

origination practices, the Bureau filed its Complaint initiating this enforcement action. (*See* Dkt. 1:

Complaint.) On April 1, 2021, the Bureau filed its Amended Complaint, which remains the

operative complaint in this action. (*See generally* Dkt. 27: Amended Compl.) The Amended

Complaint contains nine counts and the claims asserted can generally be described as alleging that

"[f]rom no later than 2015 until at least August 2019, unlicensed 1st Alliance employees routinely

and illegally engaged in mortgage-origination activities and interactions with consumers[,]" that

violated federal financial consumer laws and regulations, and "the Individual Defendants designed,

directed, or were aware of these unlawful features of 1st Alliance's business model."  (*Id.* at

¶¶ 1-6.)

After dismissal of some claims by the Court (*see* Dkt. 63, 64: Orders on Motion to

Dismiss), and the Bureau's voluntary dismissal of some other claims (*see* Dkt. 161: Joint Stip. of

Partial Dismissal), the case moved forward on six counts of the Amended Complaint. The claims

remaining in this action are summarized below.[6]

---

[6] This summary provides an overview of the Bureau's claims and is not intended to limit or otherwise
amend any claim or argument asserted in the Bureau's Amended Complaint and/or its Motion for
Summary Judgment, which was filed on January 26, 2024.

- Count 1 alleges that 1st Alliance repeatedly violated Reg Z § 1026.36(f)(2)—which implements the Truth in Lending Act (TILA)—by failing to ensure that its HLCs, which served as the first and primary contacts for consumers seeking loans from 1st Alliance, were licensed as "loan originators" under the Federal Secure and Fair Enforcement for Mortgage Licensing Act (the SAFE Act) (12 U.S.C. § 5101, *et seq.*) and/or the various state SAFE Acts;

- Count 2 alleges that 1st Alliance violated the requirement set forth in Reg Z §§ 1026.19(e)(2)(ii), (iii) that lenders must provide a Loan Estimate *before* requiring a consumer to submit documents to verify information (e.g., income, assets) related to his/her loan application.

- Count 4 alleges that, by requiring consumers to deal primarily with – and *rely* upon –HLCs, Defendants committed an "unfair practice" in violation of the Consumer Financial Protection Act (CFPA), which prohibits acts and practices that cause, or are *likely* to cause, substantial harm to consumers when such harm is neither reasonably avoidable by consumers or outweighed by countervailing benefits to consumers or competition. (12 U.S.C. §§ 5531(a), 5536(a)(1)(B)), In addition to asserting a CFPA violation against 1st Alliance, Count 4 also asserts that DiIorio and St. Lawrence should be held liable in their individual capacities for 1st Alliance's conduct.

- Counts 7 and 8 allege that 1st Alliance violated the Equal Credit Opportunity Act (ECOA) and Fair Credit Reporting Act (FCRA) by failing to provide written "adverse action notices" to thousands of consumers denied credit by 1st Alliance's HLCs.

- Count 9 alleges that 1st Alliance violated the CFPA's broad prohibition against offering or providing to a consumer any financial product or service in a manner that violates a federal consumer financial law. *See* 12 U.S.C. § 5536(a)(1)(A).

(*See generally* Dkt. 27: Am. Compl. at ¶¶ 1-6, 10-76 (reflecting factual allegations applicable to all claims and allegations of Counts 1 and 2); ¶¶ 92-134 (allegations regarding Counts 4, 7, 8, and 9).)

## <u>LEGAL STANDARDS</u>

### I.   MOTION IN LIMINE

"Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Sparano v. JLO Auto., Inc.*, No. 3:19-CV-00681 (VAB), 2022 WL 266159, at *3 (D. Conn. Jan. 29, 2022); *see Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). A request that the Court apply collateral estoppel to findings of fact made in a prior proceeding is a proper basis for a motion *in limine* because

application of collateral estoppel precludes consideration of an issue of fact, thereby eliminating

the issue from the facts to be determined at trial and eliminating relevance of evidence that relates

only to those facts. Thus, collateral estoppel is frequently the subject of a motion *in limine*. *See*

*Cobb v. Pozzi*, 363 F.3d 89, 100 (2d Cir. 2004) (noting that plaintiffs were not entitled to a jury

instruction on issue preclusion because they could have, but did not, file a "motion *in limine* to

have the [prior] findings accorded collateral estoppel effect").

A district court has "inherent authority to manage the course of its trials", and this authority

"encompasses the right to rule on motions *in limine.*" *United States v. Bradley*, No. 3:21-CR-00087

(VAB), 2022 WL 1708400, at *3 (D. Conn. May 27, 2022) (quoting *Highland Cap. Mgmt., L.P.*

*v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008)); *Luce v. United States*, 469 U.S. 38, 40

n.2 (1984) ("We use the term ["in limine"] in a broad sense to refer to any motion, whether made

before or during trial, to [determine admissibility of] evidence before the evidence is actually

offered." (first alteration in original).). Additionally, the decision of whether to grant a motion *in*

*limine* lies within the broad discretion of the trial judge. *See Williams v. Rushmore Loan Mgmt.*

*Servs. LLC*, No. 3:15CV673(RNC), 2017 WL 822793, at *1 (D. Conn. Mar. 2, 2017) ("District

courts have discretion to determine evidentiary issues presented in motions *in limine* in advance

of trial.")

## II.    COLLATERAL ESTOPPEL

Collateral estoppel—also known as issue preclusion—is that aspect of *res judicata* that

prohibits a party and its privities from relitigating an issue of fact when that issue was litigated and

determined in a prior proceeding. *Parklane Hosiery Co. v. Shore*, supra, 439 U.S. 322, 327 (1979);

*Couloute v. Bd. of Educ. of Town of Glastonbury,* 252 A.3d 420, 427 (Conn. App. 2021)

(explaining that persons found to be in privity with a corporation can be precluded from relitigating

issues the corporation has litigated and lost in a prior action), *cert. denied*, 250 A.3d 694 (Conn.

2021). The Supreme Court has "long favored application of the common-law doctrine[] of collateral estoppel . . . to . . . [final] determinations of administrative bodies," *Astoria Federal Savings & Loan Assoc. v. Solimino*, 501 U.S. 104, 107-08 (1991). Where—as here—the administrative agency's decision has been judicially reviewed and affirmed by a state court, federal courts must give the administrative judgment the same preclusive effect that the judgment would be given "under the law of the State in which the judgment was rendered." *See Yan Yam Koo v. Dep't of Buildings of City of New York,* 218 F.Appx. 97, 98 (2d Cir. 2007) (holding that "preclusive effect [of agency determination] attached once the state court reviewed and affirmed the [agency]'s finding") (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 467 (1982)); *see* 28 U.S.C. § 1738 (mandating "full faith and credit" be given to state court judgments). Thus, the applicability of collateral estoppel to the CTDOB's Findings of Fact is determined through application of Connecticut law.

Under Connecticut law, collateral estoppel may be applied when the following requirements are satisfied: (i) the issue to be precluded from relitigating is identical to the issue decided in the earlier proceeding; (ii) the issue was "actually litigated" and "actually decided" in the prior proceeding; (iii) the determination on the issue in the prior action was "necessary" to the resulting judgment in that case; and (iv) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *One Barberry Real Est. Holding, LLC v. Maturo*, No. 3:17-CV-985 (SVN), 2023 WL 386829, at *3–4 (D. Conn. Jan. 25, 2023); *Roll-A-Cover, LLC v. Cohen*, No. 3:09-CV-1378 CSH, 2012 WL 6568463, at *4 (D. Conn.

Dec. 17, 2012).[7]  In addition to these four legal requirements, "a court must also satisfy itself that application of offensive collateral estoppel is fair." *Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2021 WL 3012678, at *18 (D. Conn. July 15, 2021), *aff'd*, No. 21-2012, 2023 WL 7103275 (2d Cir. Oct. 27, 2023).

Notably, "while "[t]he burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion;" "the burden of showing that the prior action did *not* afford a full and fair opportunity to litigate the issues rests with . . . the party *opposing* the application of issue preclusion." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (emphasis added). Additionally, where—as here—the party opposing preclusion has appealed the state administrative decision and such appeal is still pending, the administrative decision retains its preclusive effect as long as it satisfied the legal requirements for collateral estoppel.  *See Palmer-Williams v. United States*, 699 F. App'x 1, 3 (2d Cir. 2017) (rejecting argument that final administrative decision "was not entitled to preclusive effect while an appeal was pending" and holding that "the preclusive effect of a judgment is immediate, notwithstanding a pending appeal"); *LaBow v. Rubin*, 95 Conn. App. 4545, 467 (2006) ("Moreover, this court has concluded that a pending appeal does not preclude the application of . . . collateral estoppel.").

---

[7]  There are two ways to use collateral estoppel: "the 'offensive' use . . .  occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. 'Defensive' use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane*, 439 U.S. at 326 n.4. However, in *Aetna Casualty & Surety Co. v. Jones*, the Connecticut Supreme Court found no basis for the it to distinguish its analysis on whether offensive or defensive collateral estoppel was being sought, explaining that "[a]s long as the party to the original suit has had a full and fair opportunity to litigate the issue and the issue was finally and necessarily decided by the court, the distinction between offensive and defensive collateral estoppel is inconsequential." 596 A.2d 414 (Conn. 1991).

## ARGUMENT

I.    **1ST ALLIANCE SHOULD BE PRECLUDED FROM DISPUTING THE FINDINGS OF FACT IN THE CTDOB ORDER.**

### A.    Identical Issues Exist In the CTDOB Proceeding and This District Court Proceeding.

The first requirement for preclusion under Connecticut law is satisfied, because the conduct at the core of the CTDOB proceedings is the same conduct that is at the core of the Bureau's allegations and contentions in this action. The "identicality" prong "is concerned . . . with *issues*— single, certain and material point[s] arising out of the allegations and contentions of the parties[.]'" *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 81 (2d Cir. 2019) (quoting *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014) (internal quotations omitted)). Where, as here, "the issue to which the plaintiff seeks to give preclusive effect concerns 'only the existence or non-existence of certain facts,' and *not* 'the legal significance of those facts. . . ,'" the issue to be precluded "need only deal with the same past events [as the previously-decided issue] to be considered identical." *Id. at* 80–81 (2d Cir. 2019) (emphasis added). Put another way, issues are identical if the issue in the current action arises out of the "same transaction" or same underlying factual "groupings" as the issues in the prior action. *Meehan v. Town of E. Lyme*, 919 F. Supp. 80, 83 (D. Conn. 1996) *aff'd*, 104 F.3d 352 (2d Cir. 1996).

The Bureau's allegations against Defendants arose from the same "events" and "transactions" as the CTDOB's allegations because the relevant factual questions for the majority of the CTDOB's claims and nearly all claims in this action include:

1. whether 1st Alliance's HLCs solicited and obtained personal and financial information from consumers—e.g., income, assets, debts, current mortgage information (if applicable), address of desired property, desired loan amount, and social security number(s) of borrowers and co-borrowers—for the purpose of determining a consumer's eligibility for a 1st Alliance loan;

2. whether 1st Alliance's HLCs engaged in discussions with consumers regarding mortgage loan terms—e.g., types of loans being offered, specific interest rates, dollar amount of loans, length/term of loans, and down payment amounts—via email communications, transmission of prequalification letters, oral discussions, or other means.

3. whether 1st Alliance required consumers to submit documents verifying information in the loan application *before* it would provide the consumer with a "Loan Estimate"—i.e., a good faith estimate of loan costs and fees, and

4. whether 1st Alliance provided an "adverse action" notice to each consumer after it denied the consumer's request to be prequalified or approved for a 1st Alliance loan.

(*Compare* Ex. 2 at 1-2, 42-43: CTDOB Order (summarizing allegations against 1st Alliance and stating final administrative determination regarding the allegations) *with* Dkt. 27: Am. Compl. ¶¶ 1-6, 10-62 (factual allegations incorporated into all claims); ¶¶ 63-76, 92-107 (allegations of Counts 1 and 4, related to use of unlicensed, unqualified HLCs acting as loan originators); ¶¶ 74-76 (allegations of Count 2, related to failure to timely issue Loan Estimates); ¶¶ 124-127, 128-130 (allegations of Count 7 and 8, related to failure to issue adverse action notices).

Notably, resolving the four overarching issues noted above required that the CTDOB make determinations about the conduct of entities and individuals not specifically identified in the question, and these are some of the same factual inquires that this Court will need to resolve. For example, while the first and second category of "events" and "transactions" listed above appear to focus on the conduct of HLCs, these issues are also dependent on factual determinations regarding, among other things: (i) the content of 1st Alliance's policies, practices, compensation packages, and business plan (and the creation and evolution of such policies, practices, compensation, and business plan) with respect to the company's loan origination processes and its issuance (or failure to issue) required Loan Estimates and adverse action notices; and (ii) the conduct, statements, knowledge, and decisions attributable to specific 1st Alliance owners and management—such as

13

DiIorio and St. Lawrence—as well as compliance personnel and other 1st Alliance employees.[8] (*See* Ex. 2 at pp. 31-42 (CTDOB Order) (detailing necessary findings for liability and factual findings made) *compare* Dkt. 27: Am. Compl. at ¶¶ 1-6, 10-76 (reflecting factual allegations applicable to all claims and allegations of Counts 1 and 2); ¶¶ 92-134 (allegations regarding Counts 4, 7, 8, and 9) and *generally* Dkt. 211: Bureau's Motion for Summary Judgement.)

If there were any doubt as to the identical nature of issues underlying the CTDOB's and the Bureau's allegations, the Court need only look to the legal provisions at issue in the two proceedings. Because those legal issues turn on findings regarding overlapping—or even identical—factual elements, the CTDOB findings are directly relevant to the proceedings here. For example, In the CTDOB Order, when determining whether 1st Alliance had violated the Connecticut SAFE Act and/or aided and abetted its HLCs in violating the Connecticut SAFE Act, the CTDOB analyzed considered the specific job duties and conduct of HLCs, to determine whether their actions constitute taking a loan application and offering or negotiating a mortgage loan. Similarly, the Bureau's allegations that 1st Alliance violated Reg. Z § 1026.36(f)(2) and its allegations that all Defendants violated the CFPA's prohibition against "unfair acts and practices"—i.e., Counts 1 and 4 of the Amended Complaint—are grounded in allegations that 1st Alliance (through its owners and management) created, implemented, and repeatedly relied on

---

[8] Although the CTDOB proceedings did not include claims that sought to find DiIorio or St. Lawrence liable in their individual capacities for the acts of 1st Alliance, the CTDOB's factual determinations regarding these individuals were relevant and important—and necessary to the final determination of the CTDOB's claims against 1st Alliance—because, during all times relevant to the claims, DiIorio served as Chief Executive Officer and majority owner of 1st Alliance (which gave him primary authority over decision-making) and St. Lawrence served as President of Loan Production and owner of the second largest share of 1st Alliance. The President of Loan Production is the senior executive in charge of the 1st Alliance department that had supervisory authority of HLCs and other employees within the company's loan origination process.

practices, policies, and a business plan that included the company's use of unlicensed HLCs to take mortgage loan applications and offer or negotiate loans.

The extensive factual overlap between the issues in the CTDOB proceedings and the instant matter make clear that applying collateral estoppel to prevent Defendants from contesting the CTDOB Order's Findings of Fact would serve the underlying purposes of the collateral estoppel doctrine, which are to promote judicial economy by minimizing repetitive litigation, and prevent inconsistent judgments which undermine the integrity of the judicial system. *See Lighthouse Landings, Inc. v. Connecticut Light and Power Company*, 300 Conn. 325, 344 (2011).

**B.    The Pertinent Issues Were "Actually Litigated" in the Connecticut Proceedings**

The second requirement for preclusion under Connecticut law—i.e., that the issues were "actually litigated" is satisfied "if [the issue] is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Sellers v. Work Force One, Inc.,* 886 A.2d 850, 853-854 (2005) (explaining requirements to establish facts were "actually litigated"). The CTDOB properly raised the issues for determination by sending to 1st Alliance on December 5, 2018, a Notice of Intent to Revoke (later superseded by a July 15, 2019 Amended and Restated Notice) that complied with Connecticut General Statues § 36a-50's requirement to detail the factual predicates (and the statutory and regulatory basis) upon which the CTDOB intended to revoke 1st Alliance's mortgage license, issue a cease-and-desist order, and impose a civil penalty against 1st Alliance. (*See generally* Ex. 1: Amended Notice (detailing factual allegations, bases for potential liability, and Connecticut laws violated by alleged conduct); *see also* Ex. 2 at 31: CTDOB Order (holding that "[t]he July 15, 2019 Amended Notice issued by the Commissioner against Respondent comported with the [notice] requirements of Section 4-177(b) of Chapter 54

of the Connecticut General Statutes and with Sections 36a-50, 36a-51 and 36a-52 of the Connecticut General Statutes.").

The relevant issues—which all relate to whether 1st Alliance engaged in certain conduct related to its origination of, or denial of applications for, mortgage loans—were submitted for determination when the full administrative record (inclusive of witness testimony and the parties' post-hearing briefing) was taken under consideration by the hearing officer and the CTDOB Commissioner. (*See generally* Ex. 2: CTDOB Order (summarizing allegations and facts alleged by the CTDOB as the basis for revocation of 1st Alliance's license and other penalties, and detailing factual issues resolved after review of full administrative record).) Finally, the issues were "in fact determined" when the Commissioner issued the CTDOB Order, which detailed the CTDOB's factual findings, cited evidence supporting those findings, and applied relevant law to such factual findings. (*See generally* Ex. 2 at pp. 2-27: CTDOB Order (detailing factual findings made by Commissioner of CTDOB and evidence supporting the findings); *id.* at pp. 31-44 (identifying applicable laws and analyzing facts in relation to Connecticut laws).

### C.    The Factual Issues Were "Necessarily Determined" In The CTDOB Proceedings

The CTDOB's factual findings were necessary—not superfluous or tangential—to its judgments, because if the CTDOB had not made the factual determinations at issue, then its "judgment could not have been validly rendered." *Sellers,* 886 A.2d at 853 (emphasis in original); *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 515 (D. Conn. 2009). That standard is clearly met here. The factual findings at issue were indispensable to the CTDOB judgement because, *before* the CTDOB could determine whether 1st Alliance's conduct violated Connecticut laws— specifically, the Connecticut SAFE Act and Connecticut laws making a violation of state law to fail to comply with the Federal SAFE Act, TILA, FCRA, and ECOA—the CTDOB *necessarily*

was required determine *the specific conduct that 1st Alliance, its owners, and employees engaged in* during the relevant period. (Ex. 2 at pp. 31-44: CTDOB Order (discussing legal elements to find liability under applicable Connecticut statutes and whether Findings of Fact, when considered in light of the law, establish unlawful conduct.)

The CTDOB Order shows that detailed factual findings were made, evidence was cited to support each factual finding, and that the relevant Connecticut law was then applied to those factual findings. For example, before making its legal determination that 1st Alliance's unlicensed HLCs performed loan origination activities, the CTDOB evaluated company documents, testimony of 1st Alliance's HLCs and compliance officers, and other evidence to resolve core and necessary factual issues regarding, *inter-alia*, the specific statements HLCs made, conduct HLCs engaged in, and statements made by 1st Alliance's CEO and its then-head of loan production (St. Lawrence) regarding loan origination. (*See*, *e.g.*, Ex. 2 at 5, 10, 13, 15, 27-28: CTDOB Order (reflecting CTDOB factual findings that identify conduct, statements, or other information regarding DiIorio or St. Lawrence.)

**D.    There Was A "Full and Fair Opportunity" to Litigate the Issues in the Connecticut Proceedings And Application of Collateral Estoppel Would Be Fair Under the Circumstances of this Case**

Connecticut courts generally hold that a party had a "full and fair opportunity to litigate" the issues—and, thus, the fourth collateral estoppel element is satisfied—when the defendant "had [the] . . . opportunity to present legal arguments in the first [action]" *and* there is no evidence that the administrative "hearing carrie[d] procedural limitations that would not be present at a later hearing," *See B. Metcalf Asphalt Paving, Inc. v. Town of N. Canaan Planning & Zoning Comm'n*, No.  LLI-CV-19-6023364-S, 2020 Conn. Super. LEXIS 2672, at *17 (Super. Ct. Apr. 20, 2020)

(describing when an administrative decision satisfies this fourth criteria for collateral estoppel to apply).[9]

The CTODB administrative proceedings exceeded these requirements. The administrative proceedings were conducted in accordance with the enforcement action provisions of Connecticut banking laws, *see*, *e.g.*, Conn. Gen. Stat. § 36a-50, and the extensive court-like procedures and safeguards detailed in Chapter 54 of Connecticut General Statutes, which embodies Connecticut's codification of the Uniform Administrative Procedures Act ("UAPA"), *see* Conn. Gen. Stat. § 4-166, *et. Seq. (*reflecting Connecticut statutory provisions adopting administrative procedures of the UAPA).[10] The Connecticut Supreme Court has held that the adjudicative procedures provided under the UAPA sufficiently provide a fair and full opportunity to litigate. *See Pet v. Dep't of Health Servs.*, 228 Conn. 651, 673, 638 A.2d 6, 20 (1994) ("The UAPA procedures . . . are patently sufficient to safeguard basic due process rights.").

Consistent with the provisions of the UAPA adopted by Connecticut, 1st Alliance was provided clear notice of the allegations against it and was given to opportunity to: conduct discovery, defend itself in an evidentiary hearing, present evidence on all issues involved, cross-examine other parties and witnesses, subpoena witnesses, require the production of records, take testimony relative to the case under oath, have an official "recording or stenographic record" of that hearing created and made available; and receive a final decision that "include[s] the agency's findings of fact and conclusions of law necessary to its decision." (*See* Ex. 2 at pp. 45-42: CTDOB Order (reflecting docket of administrative proceedings—including hearing dates,

---

[9]  This opinion is not available in Westlaw; thus, the LEXIS citation is provided.

[10]  Chapter 54 of Connecticut General Statutes is explicitly incorporated into Connecticut's banking laws. Conn. Gen. Stat. § 36a-50(a)(3) ("Each action undertaken by the [banking] commissioner under this subsection shall be in accordance with the provisions of chapter 54.")

discovery request issuance and response dates, motion and hearing brief filing dates—spanning from the issuance of the December 2018 Notice through the January 12, 2021, filing of 1st Alliance's notice of appeal in the Superior Court of Connecticut); *id.* at 1-29 (reflecting summary of procedural history, and citations to record evidence supporting factual findings).)[11]  In short, the record is replete with evidence that the CTDOB proceedings provided 1st Alliance with a full and fair opportunity to obtain evidence, present evidence, and fully address the issues in this case; thus, those proceedings satisfy the final element under Connecticut state law for application of collateral estoppel.

Under Connecticut law, the requirement that the defendant had a "full and fair opportunity to litigate" overlaps with the Court's additional required consideration of the overall fairness of applying collateral estoppel. Courts generally deem it fair to apply offensive collateral estoppel against a defendant if (i) the party had a full and fair opportunity to litigate the issues in the first action; *and* (ii) the judgment relied upon for preclusion is not inconsistent with a previous judgment in favor of defendants. *See B. Metcalf* Asphalt, 2020 Conn. Super. LEXIS 2672  at *17 (fourth element requires that party "had [the] . . . opportunity to present legal arguments in the first [action]" *and* there is no evidence that the administrative "hearing carrie[d] procedural limitations that would not be present at a later hearing,"); *Faraday*, 596 F. Supp. 2d at 515 (stating unfairness arises "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant.").

---

[11] Connecticut law provisions providing procedural safeguards during the CTDOB's proceedings: Conn. Gen. Stat. §§ 4-176e and 4177(a) (stating requirements for administrative hearing); *id*. at §§ 4-177 and 4-183 (stating requirements for creation of hearing record); Conn. Gen. Stat.  at §§ 4-177(b)-(c), 4-178; and *id* at § 4-180 (requiring issuance of a "final decision" that "include[s] the agency's findings of fact and conclusions of law necessary to its decision").

The CTDOB proceeding satisfies both elements of fairness. As previously discussed, the CTDOB proceedings offered extensive procedural safeguards and ample opportunity for the submission of evidence regarding each of the factual issues. Additionally, not only is the CTDOB judgment not inconsistent with a prior judgment in Defendants' favor but it has also been affirmed on appeal. Considering the foregoing, the Court should find that the fourth collateral estoppel requirement and considerations of fairness dictate in favor of granting collateral estoppel against 1st Alliance.

## II. DIIORIO AND ST. LAWRENCE SHOULD BE PRECLUDED FROM CONTESTING THE FINDINGS IN THE CTDOB ORDER AND THE SUPERIOR COURT ORDER.

The Court should grant the factual findings preclusive effect against the Individual Defendants to the same extent that it grants preclusive effect against 1st Alliance, because the Individual Defendants are in privity with 1st Alliance. "The doctrine of privity, in its modern form, provides that two parties can have a 'sufficiently close relationship' that it is judicially efficient to impute conduct in or outcomes from one party in a litigation to the other." *Capitol Recs., LLC v. ReDigi Inc.*, No. 12-cv-0095 RJS, 2015 WL 5076457, at *4–6 (S.D.N.Y. Aug. 27, 2015) (citing *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995)). "In determining whether privity exists, [courts] employ an analysis that focuses on the functional relationships of the parties[,]" and the paramount consideration is "that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of [collateral estoppel] is not inequitable." *Couloute*, 252 A.3d at 427; *see Trikona Advisers, Ltd. v. Chugh*, 846 F.3d 22, 33 (2d Cir. 2017) ("A party can be estopped from relitigating an issue that was decided adversely to him in a prior litigation only if the issue was litigated by that party, *or by a party with substantially similar legal interests*." (emphasis added)).

Privity applies in this case because, during the administrative proceedings, DiIorio's and St. Lawrence's legal interests were firmly aligned with, and adequately represented by, 1st Alliance. "Privity is generally found when the party to the previous litigation was the sole or managing member of a closely held corporation." *Svenningsen v. Ultimate Prof'l Grounds Mgmt.*, 2017 U.S. Dist. LEXIS 113617, at *10 (S.D.N.Y. July 20, 2017); *see World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 509 (S.D.N.Y. 2006) (applying Connecticut state law and holding that "[a]lthough [the defendant] is not . . . a party in his personal capacity in the Connecticut action [against the corporation], [the defendant] is in privity with [the corporation] because he is the President and sole shareholder of [the corporation.]"). DiIorio and St. Lawrence comprise two of the three shareholders and managing partners of 1st Alliance, holding approximately a 59.5% share and a 25.5% share of the company, respectively. Additionally, during all times relevant to the claims, DiIorio served as 1st Alliance's Chief Executive Officer and St. Lawrence served as the President of Production for 1st Alliance.

Additionally, where, as here, the officer or shareholder also "exercised control over" the corporation's involvement in the prior litigation or otherwise "actively participated in the [prior] action on behalf of the corporation", courts find that privity exists for collateral estoppel to be applied against the individual. *See Fink v. Magner*, 988 F. Supp. 74, 79 (D. Conn. 1997) (finding privity existed between corporate officer and corporation (citing Restatement (Second) Judgments (1982)). The record is clear that DiIorio exerted principal control over the administrative proceedings beginning at least as early as November 13, 2019. On that date, DiIorio advised the administrative hearing officer and CTDOB counsel that 1st Alliance would represent itself in the administrative proceedings and, from that point forward DiIorio served as 1st Alliance's representative in the administrative proceedings. (*See* Ex. 2 at p. 48: CTDOB Order (docket entry

of 11/13/2019 reflecting DiIorio assuming control of 1st Alliance's defense in CTDOB proceedings).)  The docket reflects that, as representative for 1st Alliance, he directed decision making regarding how to use the evidence and defend against the allegations made by the CTDOB. (*See id.* at pp. 48-51: CTDOB Order (docket entries reflecting DiIorio actions as 1st Alliance's representative in CTDOB proceedings).)

DiIorio's and St. Lawrence's ownership interests in 1st Alliance and their involvement in the administrative proceedings jointly and separately establish that they are in privity with 1st Alliance and, therefore, the CTDOB's findings of fact should be given the same preclusive effect against the Individual Defendants as it would have against 1st Alliance.  *See In re Teltronics Servs., Inc.*, 762 F.2d 185, 191 (2d Cir. 1985) (citing *Kreager v. General Electric Co.*, 497 F.2d 468, 472 (2d Cir. 1974) ("The interests of an officer, director, or shareholder of a corporation are 'adequately represented' by the corporation, such that 'a judgment against a corporation bars later litigation on the same [issue] by [that individual,] if the individual participated in and effectively controlled the earlier case."); *Kreager*, 497 F.2d at 472 (holding that corporate officer was in privity with the corporation where he "was present in court throughout the [earlier litigation], attended conferences in chambers and was the corporation's principal witness").

## **CONCLUSION**

For the foregoing reasons, the Bureau respectfully requests that the Court grant this motion and preclude each Defendant—1st Alliance, DiIorio, and St. Lawrence—from disputing or relitigating any of the Connecticut Department of Banking's Findings of Fact stated in its April 16, 2021, Order.

Respectfully submitted,

For Plaintiff:                                    Eric Halperin
Consumer Financial Protection Bureau            *Enforcement Director*

Alusheyi J. Wheeler
*Deputy Enforcement Director*

Julie Bean
*Assistant Litigation Deputy*

*/s/April Denise Seabrook*
April Denise Seabrook (Bar No. phv207050)
Phone: (202) 557-8822
april.seabrook@cfpb.gov

Paris A. Wynn (Bar No. phv206750)
Phone: (202) 815-0783

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

*Local Counsel:*

Sarah Gruber (Bar No. ct29918)
Assistant United States Attorney
Tel: (860) 947-1101
Fax: (203)773-5373
sarah.gruber@usdoj.gov
United States Attorney's Office
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024 a copy of the foregoing document was filed

utilizing the ECF system, which will send notice of this filing to all parties/counsel of record.

*/s/April Denise Seabrook*
April Denise Seabrook (Bar No. phv207050)
Phone: (202) 557-8822
april.seabrook@cfpb.gov